OPINION
{¶ 1} Plaintiff-appellant Katherina Rudd appeals from a judgment and decree of divorce. Ms. Rudd contends that the trial court erred by substituting its judgment on the issue of child support for the agreement of the parties, that the trial court erred by reducing a claimed arrearage in the payment of temporary spousal support to zero, and that the trial court erred by failing to issue an order to defendant-appellee Daniel Rudd's retirement benefits authority for the division of those benefits.
 {¶ 2} We conclude that the record fails to support Ms. Rudd's claim that the award of child support in this case was contrary to the agreement of the parties recited in open court. However, we also conclude from our review of the record that there is no apparent basis in the record for the trial court's having reduced to zero a claimed arrearage in the payment of temporary spousal support. Finally, we conclude that the trial court erred by failing to issue an appropriate order dealing with Mr. Rudd's retirement benefits. Accordingly, the judgment of the trial court is Reversed, in part, and Affirmed, in part, and this cause is Remanded for further proceedings consistent with this opinion.
 I {¶ 3} The parties were married in 1974. Four children were born of the marriage.
 {¶ 4} Ms. Rudd brought this action in divorce in 1999. One child was already emancipated.
 {¶ 5} A hearing was held on June 27, 2002, for the purpose of reciting into the record a settlement agreement between the parties.
 {¶ 6} On September 27, 2002, a judgment and decree of divorce was entered. Ms. Rudd appeals from that judgment and decree of divorce.
 II {¶ 7} Ms. Rudd's First and Second Assignments of Error are as follows:
 {¶ 8} "The Court Erred By Substituting Its Judgment For The Agreement Of The Parties.
 {¶ 9} "Whether An Enforceable Agreement Existed On The Record Or Could Be Arbitrarily Changed By Defendant And Approved By The Court."
 {¶ 10} Ms. Rudd argues, in support of both of these assignments of error, that the award of child support in the judgment and decree of divorce is contrary to the agreement of the parties recited into the record.
 {¶ 11} There were three minor children at the time of the divorce. It was agreed that Mr. Rudd would be designated the residential parent and legal custodian of Jordan, and that Ms. Rudd would be designated the residential parent and legal custodian of Krezsensia and Klara. The decree awarded child support to Ms. Rudd in the amount of $292 per child, per month.
 {¶ 12} Ms. Rudd contends that the agreement of the parties was that the amount of child support would be $388 per child per month. We conclude that this contention is not supported by the record.
 {¶ 13} As the hearing proceeded, counsel for Mr. Rudd recited for the record the terms of the agreed settlement. From time to time, issues would arise requiring clarification, amendment, and even re-negotiation. The transcript reflects the following with respect to the agreement concerning the payment of child support:
 {¶ 14} "MR. DEPOORTER [representing Mr. Rudd]: Child support will be per the computation worksheet that was prepared yesterday by the Court which she's — he will pay $388 per month plus the processing charges per child for two (2) children, and that shall continue until the children are 18 years of age and graduated from high school, but no way longer than 19 years of age.
 {¶ 15} "MS. STUKEY [representing Ms. Rudd]: Your Honor, I believe there was a change in the income stream that — on the new we did it [sic]. We did the calculations on the old amounts, and then you changed the amounts in the afternoon and determined that his income was around 75,000. Umm —
 {¶ 16} "THE COURT: Why don't you simply indicate the income for both parties on the record.
 {¶ 17} "MR. DEPOORTER: The income. I apologize, your Honor. The income we used yesterday was $26,728 for the wife. My understanding was it was $74,744 for the husband. I do recall some conversation of it being approximately three or four hundred more which would make it $75,000. I don't know that it's necessary for us to run a new sheet for four hundred bucks.
 {¶ 18} "THE COURT: My notes indicate that Mr. Rudd's income was $74,798.66 by the final number, which was an additional $50 from when we ran the calculation sheet.
 {¶ 19} "MR. DEPOORTER: Does the Court want me to, or Miss Stukey want me to run a new sheet? We already have $74,744, or do we need to put $74,798?
 {¶ 20} "MS. STUKEY: Your Honor, I think we should stipulate the amounts that — that's on his pay stubs, at the present time, related to his gross income, and also, we — we didn't say where the income was from. He has VA pension that has to be included.
 {¶ 21} "THE COURT: It was included in that number.
 {¶ 22} "MS. STUKEY: In the number, but not as far as the source is concerned.
 {¶ 23} "THE COURT: As well as the nontaxable income.
 {¶ 24} "MS. STUKEY: Correct.
 {¶ 25} "THE COURT: Or in-kind income if you will. All of those income streams were included in the total of $74,798.66.
 {¶ 26} "MR. DEPOORTER: Can I use the figure that is —
 {¶ 27} "THE COURT: Use that figure. Run the guideline sheet based on that figure. Run the guideline sheet. Begin with the income as it was found to be.
 {¶ 28} "MR. DEPOORTER: Seven hundred ninety-eight dollars?
 {¶ 29} "THE COURT: Sixty-six cent. We use whole numbers in our Court, however."
 {¶ 30} The above is the entirety of the reference in the transcript to the agreement concerning the payment of child support. We conclude that Mr. Rudd, through his counsel, had originally indicated a willingness to pay $388 per child per month, but that this was not agreeable to Ms. Rudd, who evidently felt that Mr. Rudd's income had been under-stated. The discussion of this subject concluded with the trial court's suggestion that $74,798.66 be used as Mr. Rudd's annual income, and that that figure, together with Ms. Rudd's annual income, which did not appear to be in dispute, be used to compute child support pursuant to the statutory guidelines. Neither party expressed any disagreement with the trial court's suggested way of resolving the matter. At the conclusion of the hearing, both parties expressed their agreement to the settlement.
 {¶ 31} Ms. Rudd now complains that she had agreed to child support in the amount of $388 per month per child, and that the trial court changed this, without her approval, to $292 per child. Significantly, Ms. Rudd does not dispute that proper application of the statutory guidelines to the agreed figures for the parties' respective incomes yields the amount of $292 per child per month.
 {¶ 32} Based upon our review of the record, we conclude that although Mr. Rudd had been willing to agree to $388 per month per child, Ms. Rudd was not agreeable, and this proposed agreement between the parties was amended, by suggestion of the trial court, to provide that the child support would be calculated pursuant to the guidelines, based upon the figures recited for the annual incomes of the parties. This proposed agreement was accepted by both parties. Unfortunately for Ms. Rudd, it evidently has resulted in a lesser amount of child support. Nevertheless, it appears from the record to be what Ms. Rudd agreed to in open court. We find no basis for disturbing that award.
 {¶ 33} Ms. Rudd's First and Second Assignments of Error are overruled.
 III {¶ 34} Ms. Rudd's Third Assignment of Error is as follows:
 {¶ 35} "The Court Erred By Reducing The Spousal Support Arrearage To Zero And Amending The Decree Without Agreement Of The Parties, Exempting Defendant From Several Months Obligation."
 {¶ 36} The parties agreed to an award of spousal support to Ms. Rudd in the amount of $1,300 per month. This award is reflected in the judgment and decree of divorce. In Ms. Rudd's Third Assignment of Error, we do not understand her to be challenging the award of spousal support; rather, we understand her to be challenging the trial court's disposition of a claimed arrearage in the payment of a temporary order of spousal support. Mr. Rudd contends that the parties agreed, at the hearing, that the arrearage would be set to zero. We find no basis in the record for Mr. Rudd's contention. The only agreement we have been able to find in the record, on Ms. Rudd's part, to set the temporary spousal support arrearage to zero, was expressly conditioned upon Mr. Rudd's paying the arrearage.
 {¶ 37} Based upon our review of the record, it appears that there was a claimed arrearage in the payment of temporary spousal support, that this claim was never waived or compromised by Ms. Rudd, and that the trial court failed to adjudicate that claimed arrearage in its judgment and decree of divorce. We find no basis in the record for the trial court's failure to have adjudicated the claimed arrearage and temporary spousal support. Accordingly, Ms. Rudd's Third Assignment of Error is sustained.
 IV {¶ 38} Ms. Rudd's Fourth Assignment of Error is as follows:
 {¶ 39} "The Court Erred By Failing To Issue An Order To The Office Of Personnel Management (OPM) For A Division Of The Defendant's Civil Service Retirement."
 {¶ 40} The judgment and decree of divorce provides that Ms. Rudd will receive one-half of the marital portion of Mr. Rudd's retirement from the date of marriage to the date of separation, "which is August 10, 1999." The decree goes on to provide that a domestic relations order shall be prepared by Ms. Rudd's attorney.
 {¶ 41} It appears that no domestic relations order has issued. Ms. Rudd asserts, and Mr. Rudd does not deny, that Mr. Rudd's retirement benefits authority, identified only as "OPM," evidently an agency of the United States government, must receive a certified copy of both the divorce decree and the domestic relations order "within one year." Neither party has identified the event triggering the commencement of that year. We assumed that it may be the date of the divorce decree was entered, which is November 27, 2002.
 {¶ 42} Mr. Rudd does not disagree that a domestic relations order should be entered, but faults Ms. Rudd and her counsel for having failed to pursue the matter. It appears that there may be some disagreement between the parties about superfluous language appearing in the draft domestic relations order prepared by Ms. Rudd.
 {¶ 43} In any event, we agree with Ms. Rudd that the trial court has an obligation to enter a domestic relations order, consistent with the agreement of the parties, and that this obligation may require the trial court to act on its own authority, if the parties cannot resolve their disagreement concerning the text of the domestic relations order. To that extent, then, Ms. Rudd's Fourth Assignment of Error is sustained.
 V {¶ 44} Ms. Rudd's First and Second Assignments of Error having been overruled, and her Third and Fourth Assignments of Error having been sustained, the judgment of the trial court is Reversed to the extent that it has failed to adjudicate the dispute between the parties concerning a claimed arrearage in the payment of temporary spousal support, and to the extent that no domestic relations order has been entered awarding Ms. Rudd an interest in Mr. Rudd's retirement benefits. The judgment of the trial court is Affirmed in all other respects. This cause is Remanded for further proceedings consistent with this opinion.
WOLFF and GRADY, JJ., concur.